## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joan Lockhart Gardner and
Susan Bofferding, on behalf of
themselves and all others
similarly situated,

                Plaintiffs,

      v.

Equifax Information Services, LLC,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 06-3102 ADM/AJB

_____

Thomas J. Lyons, Jr., Esq., Consumer Justice Center, P.A., Vadnais Heights, MN, on behalf of
Plaintiffs.

Barry Goheen, Esq., King & Spalding LLP, Atlanta, GA, on behalf of Defendant.

_____

## I. INTRODUCTION

On June 20, 2007, oral argument before the undersigned United States District Judge was

heard on Plaintiffs Joan Lockhart Gardner ("Gardner") and Susan Bofferding's ("Bofferding")

(collectively, "Plaintiffs") Motion for Class Certification [Docket No. 15].  In their Amended

Complaint [Docket No. 27], Plaintiffs, on behalf of themselves and all other individuals similarly

situated, allege a claim for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §

1681i, against Defendant Equifax Information Services, LLC ("Equifax").

## II. BACKGROUND

**A.     Motion for Class Certification**

Plaintiffs seek class certification on behalf of themselves and others similarly situated for

a claim based on Equifax's alleged violations of the FCRA.  Am. Compl. ¶ 44; Gardner Decl.

[Docket No. 20] ¶ 4; Bofferding Decl. [Docket No. 21] ¶ 16.  Specifically, Plaintiffs allege

Equifax violated the FCRA by failing to fulfill its statutorily imposed duty to reinvestigate

alleged inaccuracies in consumer credit reports upon receipt of a dispute communicated by

Plaintiffs.  Am. Compl. ¶ 44; Gardner Decl. ¶ 3; Bofferding Decl. ¶ 15;  see 15 U.S.C. § 1681i

(2006).  Both Bofferding and Gardner seek to represent the proposed class.  Gardner Decl. ¶ 7;

Bofferding Decl. ¶ 19.  Plaintiffs request relief in the form of statutory damages, attorney fees,

and costs resulting from the violations alleged.  Am. Compl. at 7.  The class proposed for

certification by Plaintiffs is defined as follows:

> A nationwide class of consumers who (a) live in US Postal zip codes allegedly owned by
> Equifax's affiliate CSC Credit Services, but whose credit files are stored on the Equifax
> database; (b) have communicated a dispute pursuant to 15 U.S.C. § 1681i directly to
> Equifax; (c) within the past two years from the date of filing of this complaint; (d) which
> disputes have not been investigated by Equifax.

Id. ¶ 31.

**B.     The Named Plaintiffs**

**1.     Joan Lockhart Gardner**

On May 31, 2005, Gardner purchased her credit report from Equifax.  Id. ¶ 5.  On

November 28, 2005, Gardner sent a dispute letter to Equifax, stating she was a victim of identity

theft and disputing several inaccuracies on her credit report.  Id. ¶ 6.  Equifax acknowledged

receipt of Gardner's dispute letter in a reply to her, sent December 15, 2005, which further stated

her correspondence was forwarded to CSC Credit Services Inc. ("CSC"), the company that researches disputes arising in the zip code in which Gardner's address is located.[1]  Id. ¶¶ 8-9. The reply instructed Gardner to contact CSC directly should she have any further questions or issues regarding her credit file.  Id. ¶ 9.  Equifax also sent a letter to Gardner on December 16, 2005, stating a "fraud alert" had been placed on her credit file.  Id. ¶ 10.  On February 28, 2006, Gardner sent another dispute letter to Equifax, to which Gardner did not receive a reply.  Id. ¶¶ 12-14.

### 2.    Susan Bofferding

In December 1998, Bofferding leased a car and financed the lease through Wells Fargo Auto Finance.  Id. ¶ 17.  In July 2003, Bofferding returned the car to the dealership and paid the lease in full.  Id. ¶ 18.  The dealership was late in making payments on the vehicle lease after the car was returned, and Wells Fargo reported the car as repossessed.  Id. ¶¶ 20-21.

In June 2006, Bofferding received letters denying her application for a student loan on behalf of her son.  Id. ¶ 22.  One of the denial letters stated that the credit decision was based on information obtained in a credit report from Equifax-CSC Credit Services.  Id. ¶ 23.  The letter explained her right as a consumer to dispute any inaccuracies contained in her credit report and to direct any communication regarding such disputes to Equifax.  Id. ¶ 24.  Being apprised of her rights, Bofferding communicated an alleged inaccuracy in her credit report to Equifax in a

---

[1] Equifax and CSC are consumer reporting agencies.  Fluellen Decl. (Def.'s Ex. [Docket No. 38] A) ¶¶ 4, 7.  CSC licenses from Equifax the computer system used to manage consumer credit files.  Id. ¶ 7.  Despite using the same system, Equifax and CSC maintain independent files for consumers based on the consumers' zip codes, and one company cannot access the other company's files without permission.  Id. ¶ 15; see generally Morris v. Equifax Info. Servs., LLC, 457 F.3d 460, 466 (5th Cir. 2006) (providing extensive description of the credit reporting industry and the commercial relationship between Equifax and CSC).

dispute letter sent on June 30, 2006, to which Bofferding did not receive a reply.  Id. ¶¶ 27-28.

**C.      Equifax's Policy Upon Receipt of a Dispute Letter**

Equifax generally does not perform reinvestigation of disputes initiated by consumers

located in CSC's zip codes.[2]  Fluellen Decl. ¶¶ 12-15.  Equifax does, in certain circumstances,

reinvestigate a dispute on a CSC file, but typically only with the advance permission and at the

direction of CSC.  Id. ¶¶ 16-17; Poch Dep. (Def.'s Ex. B; Lyons Aff. [Docket No. 44] Ex. A) at

49.  Therefore, Equifax's general policy upon receiving a dispute letter regarding a CSC-owned

file is to forward the dispute to CSC.  Fluellen Decl. ¶ 19; Poch Dep. at 5.

### III. DISCUSSION

**A.      Rule 23 of the Federal Rules of Civil Procedure**

The requirements for class certification are set forth in Rule 23 of the Federal Rules of

Civil Procedure ("Rule 23").  The proposed class must satisfy the four explicit requirements of

Rule 23(a), including: (1) numerosity ("the class is so numerous that joinder of all members is

impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3)

typicality ("the claims or defenses of the representative parties are typical of the claims or

defenses of the class"), and (4) adequacy ("the representative parties will fairly and adequately

protect the interests of the class").  Fed. R. Civ. P. 23(a); Donaldson v. Pillsbury Co., 554 F.2d

825, 829 (8th Cir. 1977).  Rule 23 also implicitly requires that named parties be members of the

objectively ascertainable class they seek to represent.  See Powell v. Nat'l Football League, 711

F. Supp. 959, 966 (D. Minn. 1989).  Additionally, a plaintiff must fulfill the requirements of a

---

[2] The file of a consumer is "owned" by a credit reporting agency if that consumer lives in a zip code that is overseen by that credit reporting agency.  See Morris, 457 F.3d at 466 n.9.

Rule 23(b) category in order to obtain certification for the proposed class.  Fed. R. Civ. P. 23(b);

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974).

The plaintiff bears the burden of proving both the threshold requirements of Rule 23(a) and fulfillment of one of the three subsections set forth in Rule 23(b).  Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  When considering a motion for class certification, the court takes the substantive allegations in the plaintiff's complaint as true, as the issue is resolved, not by an investigation into the merits of the claim, but rather by consideration of the class certification criteria.  Thompson v. Am. Tobacco Co., 189 F.R.D. 544, 549 (D. Minn. 1999); Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995).  Nonetheless, a motion for class certification "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (citation omitted).  Only after a rigorous analysis of the proposed class and the requirements of Rule 23 may a court grant class certification.  See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982).  Furthermore, a district court retains discretion in the decision to certify a class.  See In re St. Jude Med. Inc., 425 F.3d 1116, 1119 (8th Cir. 2005).

**B.   Rule 23(a) of the Federal Rules of Civil Procedure**

**1.   Implicit requirements of Rule 23(a)**

In addition to the explicit requirements enumerated in Rule 23(a), an implicit requirement is that a proposed class be definable.[3]  Powell, 711 F. Supp. at 966.  Plaintiffs must establish that the class, as proposed, is objectively ascertainable and a precise definition of the class must be

---

[3]An additional implicit requirement is that the named parties be members of the proposed class.  See Powell, 711 F. Supp. at 966.  Defendant does not appear to challenge that both Gardner and Bofferding are members of the proposed class.

given.  Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976).

Equifax challenges Plaintiffs' fulfillment of the objectively ascertainable class

requirement, stating the determination of class membership requires individual inquiry and is not

capable of ready identification.  Def.'s Opp'n Mem. [Docket No. 36] at 13 (citing Buford v. H &

R Block, Inc., 168 F.R.D. 340, 346 (S.D. Ga. 1996)).  Equifax points to occasions in which it

does investigate CSC-owned files, and the question of whether a class member "directly"

communicated a dispute to Equifax, as examples of individual assessments that would be

necessary to define the class.  Id. at 14-16.

The Court finds the class, as proposed, is objectively ascertainable.  Whether or not

Equifax followed its general business practice in a particular instance would likely be readily

determined with a cursory look at the records Equifax purportedly possesses.  See Lyons Aff.

Ex. E at 3-5.  Also, determining if Equifax "directly" received a communication from a potential

class member regarding a dispute can be considered objectively.  There would be no "difficult

determination . . . of who is in the class and who is not," like there was in Foster v. St. Jude

Medical, Inc., 229 F.R.D. 599, 607 (D. Minn. 2005).  Because the proposed class is objectively

ascertainable, the Court turns to the enumerated requirements of Rule 23(a).

**2.      Explicit Requirements of Rule 23(a)**

**a.      Numerosity**

The first requirement of Rule 23(a) is that the potential class members be so numerous

that joinder is impracticable.  Fed. R. Civ. P. 23(a).  Impracticability of joinder is a question to

be determined by the court "based upon all the circumstances surrounding a case."  Boyd v.

Ozark Air Lines, Inc., 568 F.2d 50, 55 (8th Cir. 1977).  Possible considerations include the

nature of the action, number of class members, and the size of the potential individual claims. Sonmore v. CheckRite Recovery Servs., Inc., 206 F.R.D. 257, 261 (D. Minn. 2001). Equifax does not challenge Plaintiffs' fulfillment of this requirement and the Court finds the requirement sufficiently satisfied. The potential class members are spread across a wide geographic area based on the zip codes owned by CSC, ranging from Texas to Minnesota. Poch Dep. at 8. More important is the large number of potential class members, with an early estimate of potential class members greater than 100,000. Am. Compl. ¶ 32. Given the sizable number and wide geographic dispersion of potential class members, the Court finds joinder to be impracticable, fulfilling the numerosity requirement.

### b.      Commonality

Rule 23(a)(2) requires common questions of law or fact to be present for class certification to be approved. Fed. R. Civ. P. 23(a)(2). This requirement is fulfilled upon a showing that "the legal question linking the class members is substantially related to the resolution of the litigation." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995) (citations and quotation marks omitted). This requirement is a relatively easy threshold inquiry, requiring only some common questions of law or fact amongst the class members. In re Hartford Sales Practices Litig., 192 F.R.D. 592, 603 (D. Minn. 1999).

Plaintiffs argue the potential class members all have claims stemming from Equifax's failure to reinvestigate a communicated dispute. The success of these claims, Plaintiffs argue, hinges upon the determination of the legality of what is alleged to be Equifax's common business practice. Pls.' Mem. [Docket No. 17] at 10. The Court finds the commonality requirement of Rule 23(a)(2) to be satisfied. A determination of the legality of Equifax's

allegedly regular business practice is necessary to the resolution of the claims all the proposed

class members could bring individually under the FCRA.   This common question is the only one

identified by Plaintiffs in their Amended Complaint, but is sufficient to meet the commonality

requirement under standards enunciated by the Eighth Circuit Court of Appeals.   See Am.

Compl. ¶ 38; Paxton v. Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir. 1982); see also

Thompson, 189 F.R.D. at 549.   A proposed class may satisfy the commonality requirement but

still fail under the "far more demanding" predominance requirement of Rule 23(b)(3).   Amchem

Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997).   Nonetheless, the Court finds that common

issues of law or fact exist such that the commonality requirement of Rule 23(a)(2) is fulfilled.

### c.   Typicality

Rule 23(a) further requires "the claims or defenses of the representative parties are

typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).   Typicality is present

"when the claims of the named plaintiffs emanate from the same event or are based on the same

legal theory as the claims of the class members."   In re Potash Antitrust Litig., 159 F.R.D. 682,

690 (D. Minn. 1995) (quotations omitted).   So long as other class members have claims similar

to the named plaintiff, typicality is fairly easily established.  DeBoer, 64 F.3d at 1174.

Plaintiffs argue typicality is established because the named representatives' claims arise

from the same conduct as the claims of other members of the putative class; namely, Equifax's

alleged failure to reinvestigate consumer disputes.  Pls.' Mem. at 12.  Equifax does not challenge

Plaintiffs' fulfillment of the typicality requirement.  See Def.'s Opp'n Mem. at 13-24.  The Court

finds that Plaintiffs have fulfilled the burden of establishing the typicality requirement.  The

claims of the representative Plaintiffs arise from an alleged violation of the FCRA, 15 U.S.C. §

8

1681i, as do the claims of the potential members of the proposed class.  All the claims, therefore, would necessarily involve proving a violation of a requirement imposed by § 1681i.  The low bar for fulfillment of this requirement allows for the existence of some factual differences, and the Court finds the underlying legal issue in the class members' claims similar enough to satisfy the typicality requirement.

### d.    Adequacy

The fourth enumerated condition, with its focus on protecting the interests of absent class members, requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  While related to the typicality requirement, adequacy of representation is distinct and present when "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." In re GenesisIntermedia, Inc. Sec. Litig., 232 F.R.D. 321, 330 (D. Minn. 2005).[4]  The adequacy requirement inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625.

Equifax argues the named Plaintiffs' election to forego actual damages or a negligence claim renders them inadequate representatives of the class.  Def.'s Opp'n Mem. at 18. Furthermore, Equifax avers that opt-out and notice procedures insufficiently protect absent class members from the loss of potential claims for actual damages.  Id. at 23-24.  Plaintiffs, however,

---

[4] Plaintiffs assert their counsel of record is adequate in light of previous experience litigating class actions as well as individual cases under the FCRA.  Pls.' Mem. at 13; see Lyons, Sr. Decl. [Docket No. 18]; Lyons, Jr. Decl. [Docket No. 19].  Equifax does not challenge this assertion.

9

contend that their failure to pursue actual damages or a negligence claim does not render them inadequate representatives and that notice and opt-out procedures allow any potential members to retain claims for actual damages if they so desire.  See Pls.' Reply Mem. [Docket No. 43] at 7-11 (citing Murray v. GMAC Mortgage Corp., 434 F.3d 948, 953 (7th Cir. 2006)).

Plaintiffs rely on Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006), for the proposition that failure to pursue actual damages does not preclude a finding of adequacy. Pls.' Reply Mem. at 9.  The proposed class in Murray sought statutory damages for violations of 15 U.S.C. §§ 1681b(c)(1)(B)(i) and m(d)(1)(D), resulting from a potential lender's failure to make a "firm offer of credit" upon accessing a consumer's credit file without the consumer's consent and failure to provide clear disclosure of the consumer's right to close her credit information to parties lacking prior consent.  434 F.3d at 951.  In examining the propriety of seeking only statutory but not compensatory damages, the Murray court stated: "Yet individual losses, if any, are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft."  Id. at 953.  Murray is not binding authority on this Court.  But if it were, this Court finds that in the instant case, it is not clear "[t]hat actual loss is small and hard to quantify."  Id.  Requiring class members to affirmatively opt-out to preserve actual damage claims is not justified based on the size and quantification issue of damages in this case.

Plaintiffs argue actual damages are unlikely to be imposed, based on a deposition of an Equifax employee.  Pls.' Reply Mem. at 9 (citing Fluellen Dep. (Lyons Aff. Ex. B) at 16).[5]

---

[5] In her deposition, Fluellen states: "[b]ut I personally view that there is no violation; and my personal view is that there wouldn't be any damages."  Fleullen Dep. at 16.

However, Plaintiffs offer no other argument for the claim that actual damages are unlikely to occur as a result of a 15 U.S.C. § 1681i violation.  Gardner claims to have suffered actual damages and both representatives will relinquish their respective claims for actual damages in favor of the class action, despite it being a potential disadvantage to themselves.  Gardner Dep. (Def.'s Ex. C) at 33, 37; Bofferding Dep. (Def.'s Ex. D) at 65.  If the named representatives are truly representative of the class, as Plaintiffs assert, then absent class members would suffer this same disadvantage and lose claims for actual damages should they fail to opt-out of the class action.

The Court finds the Plaintiffs to be inadequate representatives.  In order to ensure the cohesion necessary to avoid conflict within the class, the Plaintiffs seek to place a burden on members of the potential class to opt-out if they wish to retain their legal claim for actual damages.  This places a burden on too many absent class members who may have a significant actual damage claim and the Court is unwilling to effectively bar absent class members' future legal claims because of the failure of those parties to opt-out.  See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 805 (1985) (discussing the effects of res judicata).  While the Court acknowledges the existence of the opt-out mechanism as a viable method to avoid *some* conflict within a class, opt-out is not a sufficient cure for the inadequacy of representation in this case. See Clark v. Experian Info. Solutions, Inc., 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001) (denying class certification motion on adequacy grounds because of named Plaintiffs' failure to pursue actual damages); Thompson, 189 F.R.D. at 551 ("This possible prejudice to class members is simply too great for the Court to conclude that the named Plaintiffs' interests are aligned with those of the class.").

The Plaintiffs rely on the decision in <u>Egge v. Healthspan Services Co.</u>, 208 F.R.D. 265 (D. Minn. 2002), in arguing that adequacy of representation is fulfilled. <u>See</u> Pls.' Reply Mem. at 7-10. In <u>Egge</u>, a class sought certification for claims resulting from a violation of the Fair Debt Collection Practices Act. 208 F.R.D. at 266. Both statutory and actual damages were sought by the class. <u>Id.</u> at 271. An adequacy issue in <u>Egge</u> was whether a named party that had not suffered actual damages could provide adequate representation of a class seeking to recover actual damages. <u>Id.</u> at 269. In <u>Egge</u>, there was no concern of absent class members losing future claims for actual damages, which is the concern regarding the adequacy of the named parties in the instant case. The Court in <u>Egge</u> states: "The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it is not grounds for denying class certification, if the other criteria are met." <u>Id.</u> at 272. In the instant case, the other criteria for class certification are not all met, further distinguishing this case from the <u>Egge</u> case on which Plaintiffs rely. The opt-out mechanism is not meant to ensure lack of conflict within the class by forcing a large number of individuals to affirmatively retain their legal rights or lose their claims. If this were the case, any person would be an adequate representative of a proposed class so long as there was an opt-out procedure, and there would be no need for an adequacy requirement.

**C.     Rule 23(b) of the Federal Rules of Civil Procedure**

Plaintiffs seek to have the proposed class certified under Rule 23(b)(3), which requires common questions of law or fact to predominate over individual questions as well as a determination that the class action mechanism is superior to any alternative form of litigation for the same claims. Fed. R. Civ. P. 23(b)(3).

1.      **Superiority**

Rule 23(b)(3) requires class certification to be ordered only in the event of a finding that the class action mechanism is superior to alternative forms of litigation.  Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) offers the following factors for courts to consider in the superiority analysis:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs contend the interest of class members in controlling individual litigation is lacking, stating that "the expense and burden of individual litigation make it difficult, if not impossible, for members of the class to redress the wrongs done to them individually," Pls.' Mem. at 21, and "[a]bsent a class action it is unlikely that most putative class members would bring individual suits against the Defendant."  Pls.' Reply Mem. at 21.  However, the costs and attorney's fees provisions of the FCRA provide sufficient incentive for bringing individual claims.  See 15 U.S.C. § 1681n(a)(3).  The attorney's fees provision, allowing harmed individuals to pursue meritorious claims without incurring financial detriment, weighs against a finding of class action superiority over other litigation mechanisms.  See Jones v. CBE Group, Inc., 215 F.R.D. 558, 570 (D. Minn. 2003) (finding no lack of incentive for individuals to pursue actions under the Fair Debt Collection Practices Act, which "provides for actual damages, statutory damages of $1,000 plus costs and attorney's fees") (citing 15 U.S.C. § 1692k); cf. Alberts v. Nash Finch Co., Civ. No.  05-0887 PJS/JJG, 2007 WL 628388, at *9 (D. Minn. Feb. 15, 2007) (distinguishing mandatory from permissive fee-shifting provisions in finding superiority of class action mechanism despite presence of permissive fee-shifting provision).

The Court also has manageability concerns regarding the class action as proposed by Plaintiffs because of the individual nature of the issues involved in this case.  Issues such as the reasonableness of Equifax's conduct along with a determination of the willfulness of the violation are of such an individual nature that maintenance of a class action would become unwieldy.  <u>See</u> Fed. R. Civ. P. 23(b)(3)(D).

The Motion for Class Certification fails primarily because the class action mechanism is not a superior method of resolving the claims at issue.  Nonetheless, in the interest of completeness, a discussion of the predominance requirement will be undertaken as well.

**2.     Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  <u>Amchem</u>, 521 U.S. at 623.  In examining this requirement, the Court is to "conduct a limited preliminary inquiry, looking behind the pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class."  <u>Blades v. Monsanto Co.</u>, 400 F.3d 562, 566 (8th Cir. 2005) (internal citation omitted). "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual."  <u>Id.</u>

Plaintiffs assert "[t]he legal question of whether Defendant's act of failing to investigate consumer disputes violates the FCRA is common to all class members, and there will be no individualized legal questions."  Pls.' Mem. at 16.  Plaintiffs also argue the factual evidence necessary for resolution of the class action is common to all members of the class and declare that individual determinations of fact are "unnecessary" for the resolution of the action.  <u>Id.</u>

Establishing Equifax's liability for a violation of 15 U.S.C. § 1681i is an inappropriate question for resolution on a class-wide basis due to the individual nature of the reasonableness and willfulness standards.  Undoubtedly, an issue common to all members of the proposed class is whether Equifax violated the FCRA by forwarding disputes emanating from CSC-owned zip codes to CSC rather than reinvestigating the disputes itself.  However, the issue cannot be resolved on class-wide basis without substantial individual inquiry.

Plaintiffs allege Equifax violated § 1681i, which requires a consumer reporting agency, upon receipt of notice from a consumer, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A).  In order to recover the statutory damages sought, Plaintiffs would have to prove Equifax acted "willfully" in violating the reasonable reinvestigation requirement of § 1681i.  See 15 U.S.C. § 1681n(a); Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2206 (2007).  The Eighth Circuit has stated: "To show willful noncompliance with the FCRA, the plaintiff must show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998) (quoting Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997) (citations omitted)).  Furthermore, the Supreme Court has recently interpreted "willfully" in 15 U.S.C. § 1681n(a) to include violations resulting from a reckless disregard of a statutory duty imposed by the FCRA.  Safeco, 127 S. Ct. at 2216.

Determination on the reasonableness or willfulness of Equifax's actions requires examination of each particular dispute letter, Equifax's response, and subsequent communication and actions taken in response to that individual dispute.  The forwarding of a consumer dispute to another consumer reporting agency may be considered reasonable in some instances and not

in others, depending upon the nature of the communicated dispute and the type of inquiry necessary to sufficiently investigate that dispute.  Also, an inquiry into the willfulness of Equifax's behavior "examines the totality of the circumstances involved in a consumer's interaction with a credit reporting agency." Barnett v. Experian Info. Solutions, No. Civ. A. 2:00CV175, 2004 WL 4032909, at *5 (E.D. Tex. Sept. 30, 2004).  Accordingly, any willfulness investigation will inherently involve individualized issues.  A totality of the circumstances inquiry necessary to determine the reasonableness and willfulness of Equifax's behavior cannot occur on a class-wide basis.

Plaintiffs argue the possibility of subclasses remedies the problem of individualized issues.  Pls.' Reply Mem. at 20.  The creation of subclasses is an inappropriate remedy for this problem.  See Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 98 (W.D. Mo. 1997).  In order to properly place the class members into subclasses, an in-depth inquiry into the dispute letters and what they communicated, in addition to Equifax's response, would have to be undertaken.  Such an in-depth inquiry to properly develop subclasses removes one of the benefits of the class action mechanism in the first place, which is the avoidance of individual inquiry.

The issues demanding individualized inquiry predominate over common legal and factual issues in this case.  Although a class-wide common question exists, the issues of liability and damages are questions that are individual in nature and therefore, not suitable for resolution as a class action.  Therefore, the Motion for Class Certification fails on these additional grounds.[6]

---

[6] After oral argument was heard on this matter, Plaintiffs submitted a letter [Docket No. 49] calling attention to the recent decision of Jancik v. Calvary Portfolio Services, LLC, Civ. No. 06-3104 MJD/AJB, 2007 WL 1994026 (D. Minn. July 3, 2007).  The Jancik case, however, is not particularly instructive given its factual and legal differences.  The plaintiff in Jancik sought both statutory and actual damages for violations of the Fair Debt Collection Practices Act on

16

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification [Docket No. 15] is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 6, 2007.

---

behalf of 9,697 putative class members.  Jancik, 2007 WL 1994026 at *1.  The Court also finds that in the instant case, the attorney's fees provision provides sufficient incentive for individual plaintiffs to bring suit, should they feel aggrieved by a violation of the FCRA.